UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY J.,[1]

        Plaintiff,

  v.                                                   **DECISION AND ORDER**
                                                              21-CV-34-A

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

      Plaintiff Anthony J. ("Plaintiff") brings this action seeking review of the Commissioner of Social Security's final decision that denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), and Supplemental Security Income ("SSI") under Title XVI of the SSA. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 7, 8), and Plaintiff filed a reply (Dkt. No. 10).

      The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision. *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges (ALJs) are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and this matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on October 11, 2017, at the age of 27, alleging disability beginning on August 1, 2015, due to depression, bipolar disorder, schizophrenia, a learning disability, and heart problems.  T. 122-123, 135-136, 252.[2] With respect to Plaintiff's DIB application, Plaintiff's date last insured was March 31, 2017.  *See* T. 78, 122.

Plaintiff's applications were initially denied in June 2018.  T. 148-158.  After requesting a hearing, T. 161-162, Plaintiff appeared with his attorney and testified at a video hearing on February 3, 2020, along with a Vocational Expert who also testified, *see* T. 94-119.  Following the hearing, the ALJ issued an unfavorable decision dated March 31, 2020.  In that decision, the ALJ found that Plaintiff had three severe impairments, *i.e.*, mild intellectual disability, depression/ bipolar affective disorder, and anxiety, and one non-severe impairment, *i.e.*, substance abuse.  T. 80.  Nevertheless, in determining Plaintiff's residual functional capacity

---

[2] "T. __" refers to pages of the administrative transcript at Dkt. No. 6, specifically the pagination located in the bottom, right-hand corner of the transcript, not the pagination generated by CM/ECF in the header.

("RFC"), the ALJ found that Plaintiff was able to "perform a full range of work at all exertional levels" but with the following nonexertional limitations:

> The claimant is limited to simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); simple work-related decisions; and few changes in a routine work setting defined as performing same duties at same station or location day to day.  Additionally, the claimant can have occasional interaction with supervisors, occasional contact with coworkers with no tandem tasks or team type activities, and no contact with the public.

T. 83.  The ALJ ultimately found Plaintiff not disabled within the meaning of the SSA. T. 74-88.  Plaintiff thereafter requested review by the Appeals Council, but his request was denied in November 2020.  T. 1-7.  This action seeks review of the Commissioner's final decision.  Dkt. No. 1.

## **DISCUSSION**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g).  "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

Plaintiff makes two arguments in support of his motion for judgment on the pleadings.

Plaintiff first argues that remand is required because the ALJ failed to develop the record with missing mental health records she was aware of, and improperly relied on the absence of those records to discredit Plaintiff's allegations about his symptoms. Plaintiff also argues that because the ALJ failed to adequately develop the record as to his mental impairments, the ALJ's RCF formulation is unsupported by substantial evidence. Moreover, even assuming an adequate record, Plaintiff next contends the ALJ's mental RFC was erroneously based upon the ALJ's lay opinion and she failed to include a function-by-function assessment.

**I.     Development of the Record**

"Even when a claimant is represented by counsel, it is the well-established rule in [the Second] [C]ircuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citations omitted). However, there is a "flip-side of this same proposition" (*Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999)), as "the ALJ's duty to develop the record is not limitless" (*Will v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 421 (W.D.N.Y. 2019)). When "there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5, quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). "Whether the ALJ

4

met the duty to develop the record is a threshold question before determination of whether the ALJ's conclusions are supported by substantial evidence[.]" *Miller v. Comm'r*, 18CV450, 2019 WL 3780085, 2019 U.S. Dist. LEXIS 135623, *10 (W.D.N.Y. Aug. 12, 2019) (internal quotation marks and citations omitted).

On this preliminary issue, Plaintiff argues that there is an obvious gap pertaining to treatment records from his mental health provider, Dr. Viktor Yatsynovich, and therefore remand is required for the ALJ to obtain and address those missing records. The Court finds a procedural history necessary to explain its analysis of the missing records argument.

In a letter dated January 23, 2020, and in advance of the February 3, 2020 hearing, Plaintiff's counsel wrote to the ALJ informing her that his office was waiting for requested medical records from several providers, *i.e.*, Erie County Medical Center ("ECMC"), Niagara Falls Community Health Center, and Niagara Falls Memorial Hospital.[3]  T. 305-306.

At the hearing, the ALJ noted this correspondence and asked when Plaintiff's counsel anticipated receipt of those records and what he expected them to contain. T. 97.  Plaintiff's counsel stated he could not necessarily predict what the content of the records might be, but they all related to Plaintiff's mental health treatment.  He explained that Plaintiff had moved to Western New York from Texas, and counsel's office had been "attempting to get those records since he moved."  T. 97.  Plaintiff's

---

[3] At the hearing, Plaintiff's counsel clarified that Plaintiff went to Niagara Falls Community Mental Health Center, which was located within the hospital.  He had requested records from both entities "to cover our bases . . . [and] to ensure we get the complete record."  T. 97.

5

counsel asked that the ALJ hold the record open for two weeks post-hearing, which he thought would suffice to obtain the documentation, and the ALJ agreed to do so. T. 97.  Plaintiff testified during the hearing that he had been residing in Western New York for 2 ½ years and had been receiving mental health treatment "the whole time" at Niagara Falls Memorial Hospital.[4]  When asked by the ALJ what providers he saw there, Plaintiff testified, "Dr. Y and what's her name?  Amanda is a psychiatrist and Dr. Y gives me my medications and ups it or downs it."  T. 103.  The ALJ asked if Dr. Y stood for "Dr. Yatsynovich," and Plaintiff said he thought so.  T. 103.

Three days after the hearing, on February 6, 2020, Plaintiff's counsel submitted records from Niagara Falls Memorial Hospital, from an appointment with Dr. Yatsynovich on August 13, 2019 (hereinafter, "August 2019 appointment" or "August 2019 records"), labeled "Behavioral Health MH Screening."  T. 463-470 [10F].[5]  At the appointment, Dr. Yatsynovich chronicled Plaintiff's history, performed a mental status examination, and diagnosed Plaintiff with posttraumatic stress disorder, severe; and intermittent explosive disorder, to rule out cannabis disorder. He developed a plan for Plaintiff to try several medications (*i.e.*, Paxil [Paroxetine], Clonidine, and Remeron [Mirtazapine]) and scheduled a follow-up appointment in

---

[4] The ALJ stated in her decision that the move to Western New York occurred in "mid-2018" (T. 85), meaning by this calculation as of the February 3, 2020 hearing Plaintiff had been in Western New York for approximately 1 ½ years to 1 year and 8 months, which comports with other record evidence.  *See, e.g.,* T. 179, 459, 465.  This appears to be a more accurate estimate of this timeline than Plaintiff's testimony at the February 3, 2020 hearing that he had been residing in Western New York for 2 ½ years.

[5] The cover letter from Plaintiff's counsel mistakenly stated the records from Dr. Yatsynovich reflected treatment from September 8 through September 10, 2018, which were the two dates Plaintiff was seen at ECMC, as reflected in other records submitted after the hearing.  T. 463; *see* T. 456-462 [9F].

one to two weeks' time.  Dr. Yatsynovich also noted, "[w]ill see a counselor on a regular basis."  T. 464-466.  A document labeled "Medication Reconciliation" affixed to the treatment notes states, "No Reconciliation History."[6]

Further post-hearing records that had been submitted to the ALJ before the hearing and that are relevant to Dr. Yatsynovich include a "Claimant's Medications" form ("Form HA-4632") filled out by Plaintiff, with handwritten notations that Dr. Yatsynovich had prescribed him Divalproex, Clonidine, Paroxetine, Olanzapine, Quetiapine, and Aripiprazole.  The listed prescription dates are October 28, 2019; November 11, 2019; November 29, 2019; and December 12, 2019, which all post-date the August 2019 appointment.  *See* T. 312-313 [12E], 317-318 (duplicates) [14E].  A "Patient Prescription Record" from CVS pharmacy documents dates throughout 2019 when the prescriptions were filled, corresponding to dates supplied by Plaintiff in Form HA-4632.[7]  T. 319 [14E].

In her decision, the ALJ stated that Plaintiff's counsel's post-hearing submission of records from ECMC and Niagara Falls Memorial Hospital was "added to the record and considered in the decision."  T. 77; *see* T. 92 (9F and 10F listed as

---

[6] "Medication reconciliation refers to the process of avoiding . . . inadvertent inconsistencies across transitions in care by reviewing the patient's complete medication regimen at the time of admission, transfer, and discharge and comparing it with the regimen being considered for the new setting of care."  *Wilson v. Astrue*, Civil File No. 10-418 (MJD/AJB), 2011 WL 916357, 2011 U.S. Dist. LEXIS 27801, *11 n. 14 (D. Minn. Feb. 11, 2011) (internal quotation marks and citations omitted), *report and recommendation adopted by* 2011 WL 938304, 2011 U.S. Dist. LEXIS 27850 (D. Minn. Mar. 16, 2011).

[7] There are several additional dates associated with medications prescribed by Dr. Yatsynovich in the CVS record that are not in HA-4632, *i.e.*, November 24, 2019, and December 8 and 26, 2019.  Olanzapine is not listed, but two medications in addition to those indicated by Plaintiff in HA-4632 are listed, Mirtazapine and Temazepam.

7

exhibits to the decision). The 2019 medication- and prescription-related documents were also included in the record. *See* T. 91 (Exhibits 12E and 14E).

Plaintiff's counsel later submitted additional medical records from Niagara Falls Memorial Hospital to the Appeals Council (*see* T. 8-71),[8] which as noted by the Appeals Counsel (*see* T. 2) were either duplicative of the August 2019 records or post-dated the ALJ's decision and pertained only to physical impairments, the latter which are not at issue in this appeal.

Plaintiff argues that the ALJ, who was aware of Plaintiff's mental health treatment, shirked her affirmative duty to develop the record because she "should have recognized that Plaintiff treated with Dr. Yatsynovich more than once," upon seeing Plaintiff was prescribed medications by Dr. Yatsynovich after the August 2019 appointment and upon listening to Plaintiff's hearing testimony. Plaintiff asserts that the ALJ should have obtained the remaining records from at least the dates corresponding to those listed in Form HA-4632.

"Generally, the ALJ's duty to develop the record is satisfied where . . . the ALJ keeps the record open to receive further evidence after the administrative hearing but the plaintiff fails to provide such evidence nor requests the ALJ's assistance in obtaining the records." *Elizabeth S. v. Comm'r of Soc. Sec.*, CASE # 19-cv-06440, 2021 WL 1054371, 2021 U.S. Dist. LEXIS 52409, *13-14 (W.D.N.Y. Mar. 19, 2021), citing *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. Sept. 8, 2005)

---

[8] Because this evidence was submitted only to the Appeals Council, it "became a part of the administrative record when the Appeals Council denied review." *Rayburn v. Colvin*, No. 6:14-CV-06500 (MAT), 2015 WL 8482780, 2015 U.S. Dist. LEXIS 164969, *8 (W.D.N.Y. Dec. 9, 2015) (internal citations omitted).

(summary order) (holding the ALJ did not err in failing to contact or obtain records from a treating physician mentioned by plaintiff at his hearing, where plaintiff's counsel advised she was seeking the missing records, the ALJ kept the record open but counsel never submitted additional records, "counsel later contacted the Social Security Administration to advise it that [plaintiff] had " 'nothing further to add' to the record," and plaintiff did not request the ALJ's assistance in obtaining the records); *see Christine D. v. Comm'r of Soc. Sec.*, Case # 1:20-cv-035-DB, 2021 WL 2042430, 2021 U.S. Dist. LEXIS 97110, *14 (W.D.N.Y. May 21, 2021).

Even so, "courts have held that if certain medical records are central to the disability determination, counsel's failure to provide the records does not excuse the ALJ from making a good faith effort to obtain the records on his [or her] own." *Davis v. Colvin*, 15-CV-479-MJR, 2016 WL 4708515, 2016 U.S. Dist. LEXIS 122422, *21-22 (W.D.N.Y. Sept. 9, 2016) (collecting cases).  In addition, although the ALJ does not need to develop the record unless it contains obvious gaps, "the courts of this Circuit have repeatedly held that an ALJ has a heightened duty to develop the record when a claimant is alleging mental illness." *Freeman v. Comm'r of Soc. Sec.*, 19-CV-00068, 2020 WL 3819087, 2020 U.S. Dist. LEXIS 119874, *11-12 (W.D.N.Y. July 8, 2020) (collecting cases); *see Kham v. Comm'r of Soc. Sec.*, 18-CV-790Sr, 2020 WL 947926, 2020 U.S. Dist. LEXIS 33825, *9 (W.D.N.Y. Feb. 27, 2020) ("Due to the difficulty in determining whether individuals suffering from mental illness will be able to adapt to the demands or stress of the workplace, the duty to develop the record is particularly important where mental illness is present.").

Contrary to the Commissioner's argument that the CVS prescription list is the "only" evidence suggesting psychiatric notes were missing from the record, there were multiple other references in the record to outstanding evidence, as outlined above.  See, e.g., Rodriquez ex rel. C.W. v. Colvin, 14-CV-214S, 2015 WL 5037014, 2015 U.S. Dist. LEXIS 112257, *7-9 (W.D.N.Y. Aug. 23, 2015).  This included the indication in the August 2019 treatment note that Plaintiff was scheduled to follow-up in one or two weeks with Dr. Yatsynovich and the note that he was also projected to regularly see a counselor.  Moreover, in assessing the consistency of Plaintiff's statements regarding his symptoms when compared with other evidence in the record, the ALJ acknowledged Plaintiff's testimony that "he receives mental health treatment that includes medication management."  T. 84.

Plaintiff contends that the error in failing to obtain the missing records is not harmless because, among other things, the ALJ relied on Dr. Yatsynovich's treatment notes in concluding Plaintiff's mental health symptoms had improved and in discounting his alleged severity of symptoms, and the ALJ relied on the absence of records to discredit Plaintiff's allegations regarding his symptoms.  Upon review of the record and the ALJ's decision, the Court agrees, although it is a close call.

Both parties agree that the mental health treatment records in this record were "sparse."  See Dkt. No. 7-1, p. 20; Dkt. No. 8-1, p. 2.  There were only approximately 120 pages of such records spanning about 4 ½ years, despite Plaintiff's various mental health diagnoses that included major depressive disorder, anxiety disorder, bipolar disorder, schizophrenia, cluster B personality disorder, and PTSD.  And the ALJ pointed to the general lack of treatment records in arriving at

her conclusion that Plaintiff is not disabled.  See T. 84 ("The claimant received mental health treatment intermittently from Gulf Coast Health Center.  The record shows only one visit with Gulf Coast Health Center between June 2016 and March 2018."); T. 86 (reasoning the RFC assessment was supported, in part, by "relatively modest treatment records"), see, e.g., Rodriquez ex rel. C.W., 2015 U.S. Dist. LEXIS 112257, at *8 (remanding where "despite being on notice that further relevant school counseling records *likely* existed, the ALJ rejected the allegations of [the p]laintiff and [the minor child]'s second grade teacher because their allegations of behavioral issues were 'not reflected in school records'") (emphasis added).

      Moreover, the ALJ concluded there was an inconsistency between Plaintiff's statements of symptoms and other evidence in the record, *i.e.*, the August 2019 treatment note that the ALJ interpreted as showing his "mental health condition improved."  T. 85.  By August 2019, the ALJ reasoned, Plaintiff's mental status examination revealed "no significant depressive symptoms," among other normal findings.  T. 85.  However, further records from Dr. Yatsynovich may very well show longitudinal evidence that Plaintiff's condition had *not* improved.  See Hull v. Comm'r of Soc. Sec., 17-CV-1299-MJR, 2019 WL 1760053, 2019 U.S. Dist. LEXIS 67798, *11 (W.D.N.Y. Apr. 22, 2019) (holding that because the SSA regulations recognize the necessity of longitudinal evidence in evaluating mental impairments, "a two-year gap in [plaintiff]'s health records is not harmless error"); Will, 366 F. Supp. 3d at 425 ("[T]he record is missing treatment notes documenting over one years' worth of mental health evaluations, including the decision to prescribe [the plaintiff]

medications for his serious impairment.  These records likely contained information relevant to the ALJ's evaluation of [the plaintiff]'s alleged disability.").

The record suggests that Niagara Falls Memorial Hospital does have treatment records beyond the single-day records from Dr. Yatsynovich.  While the Commissioner asserts that the alleged, missing records may not exist, even if they do not, "confirming as much will allow for more effective review should the ALJ again deny [Plaintiff]'s request for benefits."   *Davis*, 2016 U.S. Dist. LEXIS 122422, at *24; *see Freeman*, 2020 U.S. Dist. LEXIS 119874, at *11 (rejecting the Commissioner's non-persuasive argument that "the existence and content of any additional records is unknown, and, regardless of their existence, Plaintiff should have made attempts to request additional records sooner as the ALJ was unaware of their existence prior to him issuing his decision"); *see also Rodriquez ex rel. C.W.*, 2015 U.S. Dist. LEXIS 112257, at *9 ("Although the ultimate determination may or may not change, further development of the record and the written decision will allow for more clarity and effective review.").  Moreover, this case is distinguishable from those where Plaintiff indicated in a post-hearing submission that the record was complete.

On remand, the ALJ is directed to exercise her duty to develop the record to ensure it is complete, including working to obtain any missing treatment records from Niagara Falls Memorial Hospital, such as those from Dr. Yatsynovich and from any counselor or psychiatrist Plaintiff was seeing to the extent those records are locatable.  The provider will submit a statement if there are no further records available during the disability period under review.

## II.   Mental RFC Finding

Given the Court's determination that remand is necessary for the ALJ to address development of the record and the Commissioner to reassess the RFC in light of any new evidence obtained, the Court need not and does not address Plaintiff's remaining arguments, including that the RFC was determined upon the ALJ's lay interpretation of the raw medical record.  However, on remand, the ALJ shall also consider this argument.

## **CONCLUSION**

For all the above reasons, Plaintiff's motion (Dkt. No. 7) for judgment on the pleadings is GRANTED, the Commissioner's cross-motion (Dkt. No. 8) for similar relief is DENIED, and the Commissioner's decision is VACATED and the case REMANDED to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

       _s/Richard J. Arcara_
       HONORABLE RICHARD J. ARCARA
       UNITED STATES DISTRICT COURT

Dated:   February 22, 2023
       Buffalo, New York